## CUMBERLAND FARMS, INC. *v.* TOWN OF GROTON
### (SC 16501)

Borden, Norcott, Katz, Palmer and Zarella, Js.

---

Argued January 10—officially released November 19, 2002

*Michael A. Zizka,* with whom was *Kari L. Olson,* for the appellant (plaintiff).

*Eileen Duggan,* with whom was *Andrew Brand,* for the appellee (defendant).

*Opinion*

PALMER, J. The plaintiff, Cumberland Farms, Inc., appeals[1] from the judgment of the trial court rendered in favor of the defendant, the town of Groton (town). The plaintiff initiated the present action against the town, alleging that the denial of its application for a zoning variance by the town's zoning board of appeals (board) effected an inverse condemnation[2] of its property entitling the plaintiff to compensation under the takings clauses of the fifth amendment to the United States constitution[3] and article first, § 11, of the constitution of Connecticut.[4] The trial court, *Martin, J.,*

---

[1] The plaintiff appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] "[A] regulatory taking—also known as inverse condemnation—occurs when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding and, therefore, require the government to pay compensation to the property owner. *Southview Associates, Ltd.* v. *Bongartz,* 980 F.2d 84, 93 n.3 (2d Cir. 1992), cert. denied, 507 U.S. 987, 113 S. Ct. 1586, 123 L. Ed. 2d 153 (1993); see *First English Evangelical Lutheran Church* v. *Los Angeles,* 482 U.S. 304, 315, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987) (landowner entitled to bring action in inverse condemnation as result of self-executing character of takings clause)." (Internal quotation marks omitted.) *Cohen* v. *Hartford,* 244 Conn. 206, 220, 710 A.2d 746 (1998).

[3] The fifth amendment to the United States constitution provides in relevant part: "[P]rivate property [shall not] be taken for public use, without just compensation." The takings clause of the fifth amendment is applicable to the states through the due process clause of the fourteenth amendment. E.g., *Palazzolo* v. *Rhode Island,* 533 U.S. 606, 611, 617, 121 S. Ct. 2448, 150 L. Ed. 2d 592 (2001); see *Darien* v. *Estate of D'Addario,* 258 Conn. 663, 665 n.3, 784 A.2d 337 (2001).

[4] Article first, § 11, of the constitution of Connecticut provides: "The property of no person shall be taken for public use, without just compensation therefor."

granted the town's motion for summary judgment, concluding that there was no genuine issue of material fact and that the town was entitled to judgment as a matter of law. See Practice Book § 17-49. In so concluding, the court determined that the plaintiff was barred, under the doctrine of collateral estoppel, from litigating certain factual issues that had been decided by the board in denying the plaintiff's variance application and that ostensibly had been decided by the trial court, *Purtill, J.*, in denying the plaintiff's administrative appeal from the adverse decision of the board. On appeal, the plaintiff claims that the trial court, *Martin, J.*, improperly gave preclusive effect to the resolution of certain factual issues by the board and the court, *Purtill, J.* We agree with the plaintiff that the doctrine of collateral estoppel does not bar the plaintiff from litigating, in its inverse condemnation action, any factual issues that are pertinent to its inverse condemnation claim. In light of our conclusion, which compels us to reverse the judgment of the trial court, *Martin, J.*, and remand the case for a determination on the merits of the plaintiff's inverse condemnation claim, we must decide a second issue raised by the plaintiff, namely, whether the court, *Hon. D. Michael Hurley*, judge trial referee (*Hurley, J.*), improperly granted the town's motion to strike the plaintiff's case from the jury docket. The plaintiff challenges the decision to grant the town's motion to strike the plaintiff's case from the jury docket, claiming that the plaintiff's inverse condemnation claim gives rise to a right to a jury trial under article first, § 19, of the constitution of Connecticut.[5] We reject the plaintiff's claim regarding its right to a jury trial and, accordingly,

---

[5] Article first, § 19, of the constitution of Connecticut provides: "The right of trial by jury shall remain inviolate."

Although article first, § 19, of the constitution of Connecticut has been amended by article four of the amendments to the constitution of Connecticut, those amendments are not relevant to the merits of this appeal. Therefore, we refer only to article first, § 19, throughout this opinion.

affirm the decision of the court, *Hurley, J.*, to grant the town's motion to strike the plaintiff's case from the jury docket.

This appeal marks the second occasion that we have had these parties before us in this matter. In *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 197, 201–202, 719 A.2d 465 (1998), we concluded that the board's denial of the plaintiff's application for a variance constituted a final decision that enabled the plaintiff to maintain this separate and independent inverse condemnation action without first pursuing its administrative appeal to completion. Our opinion in that case sets forth the following facts relating to the plaintiff's variance application. "[T]he plaintiff . . . owns land with a building, other structures and improvements in Groton. The building is more than twenty years old and was used as a car repair garage and gasoline service station since before the area was zoned residential by the . . . town. Three underground gasoline storage tanks are also located on the property. The car repair use of the building was abandoned in 1979. The remainder of the building continues to be used to sell gasoline and, to a limited extent, snacks and sundries.

"To comply with environmental laws and regulations, the plaintiff's property requires substantial upgrading. To offset the costs of these improvements, the plaintiff applied to the . . . board . . . for a variance to the zoning regulations so that the [existing] nonconforming use of the property could be expanded to include a convenience store, as well as the existing gasoline service station." (Internal quotation marks omitted.) Id., 198. The board denied the plaintiff's variance application after a hearing, stating as its reasons: "No hardship [was] shown. [The] [v]ariance request did not meet the

criteria of [§ 8.5-8][6] of the [1996] town . . . zoning regulations. [The] [p]roposed expansion to a convenience store . . . was considered financial. Also, [the] applicant is presently making reasonable use of the property. In addition, the applicant purchased [the] property knowing the nature of the nonconform[ity]."

Thereafter, the plaintiff appealed from the board's denial of its variance application to the Superior Court; see General Statutes (Rev. to 1995) § 8-8 (b);[7] claiming that the board's decision was illegal, arbitrary and an abuse of its discretion. The plaintiff contended, inter alia, that the board improperly had declined to credit certain expert opinion indicating that the combined

---

[6] Section 8.5-8 of the zoning regulations of the town of Groton, 1996, provides in relevant part: "The Zoning Board of Appeals shall have the following powers . . .

"B. Variances

"Grant variances from the strict application of these regulations when, by reason of exceptional narrowness, shallowness, shape or substandard size of specific parcels of property, the strict application of these regulations or amendments thereto would result in unusual difficulty or unreasonable hardship upon the owner of said property; provided that such relief or variance can be granted without substantial impairment of the intent, purpose, and integrity of these regulations and of the Plan of Development for the Town of Groton.

"Before granting a variance on the basis of unusual difficulty or unreasonable hardship, there must be a finding by the Board of Appeals that all of the following conditions exist:

"1. That if the owner complied with the provisions of these regulations, he would not be able to make any reasonable use of his property.

"2. That the difficulties or hardship are peculiar to the property in question, in contrast with those of other properties in the same district.

"3. That the hardship was not the result of the applicant's own action.

"4. That the hardship is not merely financial or pecuniary."

[7] General Statutes (Rev. to 1995) § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."

effect of state environmental regulations and the town's zoning regulations was a diminishment in the value of the plaintiff's property such that the value was "practically destroy[ed] . . . for any of the uses to which it could reasonably be put . . . ." The court, *Purtill, J.,* rejected the plaintiff's claim, explaining that it was bound, under the deferential standard of review applicable to appeals from the administrative decisions of zoning boards of appeals,[8] to deny the plaintiff's appeal if any one of the reasons articulated by the board was supported by the record. The court, *Purtill, J.,* then examined each of those reasons and concluded that each reason was "reasonably supported by the record." Consequently, the court, *Purtill, J.,* rendered judgment denying the plaintiff's appeal. Thereafter, the plaintiff filed a petition for certification to appeal to the Appellate Court, which that court denied.

During the pendency of the plaintiff's appeal from the board's denial of its variance application, the plaintiff commenced the present action, alleging that the board's denial of its application for a variance constituted an inverse condemnation entitling it to compensation under the takings clauses of the federal and state constitutions.[9] The plaintiff claimed that the cost of upgrading its property to conform with environmental laws and regulations made it economically unfeasible to continue

[8] In such appeals, "[t]he Superior Court's scope of review is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal. . . . Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the [board] was required to apply under the zoning regulations. . . . It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." (Citations omitted; internal quotation marks omitted.) *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals,* 257 Conn. 456, 470, 778 A.2d 61 (2001).

[9] Inverse condemnation was the only claim that the plaintiff raised in its one count complaint.

to use the property under the existing, limited, nonconforming use or to change the use of the property to a conforming use. The plaintiff further claimed that the property was not suitable for redevelopment for uses permitted under the town's zoning regulations because a gasoline station previously had been operated on the property.

The town moved to dismiss the plaintiff's inverse condemnation claim on the ground that the trial court lacked subject matter jurisdiction owing to the plaintiff's pending administrative appeal. The court, *Hurley, J.*, granted the town's motion to dismiss[10] and rendered judgment thereon, from which the plaintiff appealed to the Appellate Court. The Appellate Court affirmed. *Cumberland Farms, Inc.* v. *Groton*, 46 Conn. App. 514, 520, 699 A.2d 310 (1997). We granted the plaintiff's petition for certification to appeal to this court; *Cumberland Farms, Inc.* v. *Groton*, 243 Conn. 936, 702 A.2d 641 (1997); and thereafter reversed the judgment of the Appellate Court, concluding that "the board's denial of the variance application constituted a final decision that enabled the plaintiff to maintain an independent inverse condemnation action against the town for an alleged unconstitutional taking without first pursuing its administrative appeal to completion." *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 201–202.

After the case was remanded to the Superior Court, the plaintiff filed a claim for a jury trial pursuant to General Statutes § 52-215.[11] The town moved to strike

[10] The court, *Hurley, J.*, granted the town's motion to dismiss on the grounds that no final administrative decision had been rendered, that the plaintiff had failed to exhaust its administrative remedies, and that the prior pending action rule required dismissal of the plaintiff's inverse condemnation action because the plaintiff could have raised its takings claim on appeal from the denial of its application for a variance.

[11] General Statutes § 52-215 provides: "In the Superior Court a docket shall be kept of all cases. In such docket immediately following the names of the parties and their attorneys in all jury cases shall be entered the word 'jury.' The following-named classes of cases shall be entered in the docket as jury

the plaintiff's case from the jury docket, contending that an inverse condemnation claim is equitable in nature and, therefore, does not give rise to a constitutional right to a jury trial.[12] The court, *Hurley, J.*, granted the town's motion to strike the plaintiff's case from the jury docket.

Thereafter, the town moved for summary judgment, claiming that no material facts were in dispute because the doctrine of collateral estoppel operated to bar the plaintiff from: (1) relitigating certain factual issues that the board had resolved in denying the plaintiff's vari-

cases upon the written request of either party made to the clerk within thirty days after the return day: Appeals from probate involving the validity of a will or paper purporting to be such, appeals from the actions of commissioners on insolvent estates, and, except as hereinafter provided, civil actions involving such an issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity, except that there shall be no right to trial by jury in civil actions in which the amount, legal interest or property in demand does not exceed two hundred fifty dollars or in a summary process case. When, in any of the above-named cases an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party made to the clerk; and any such case may at any time be entered in the docket as a jury case by the clerk, upon written consent of all parties or by order of court. All issues of fact in any such case shall be tried by the jury, provided the issues agreed by the parties to be tried by the court may be so tried. All cases not entered in the docket as jury cases under the foregoing provisions, including actions in which an account is demanded and judgment rendered that the defendant shall account, writs of habeas corpus and ne exeat, complaints for dissolution of marriage and all other special statutory proceedings which, prior to January 1, 1880, were not triable by jury, shall be entered on the docket as court cases, and shall, with all issues of law and issues of fact, other than those hereinbefore specified, which may be joined in actions entered on the docket as jury cases, be disposed of as court cases."

[12] Before the town filed its motion to strike the plaintiff's case from the jury docket, the town filed a motion to strike the plaintiff's complaint. In support of its motion, the town claimed that the necessary costly upgrades to the plaintiff's property, which formed the primary basis for the plaintiff's inverse condemnation claim, were required pursuant to state and federal law, and not pursuant to the town's zoning regulations. The court, *Martin, J.*, denied the town's motion, concluding that the plaintiff alleged facts that were sufficient to support its takings claim. That ruling is not at issue in this appeal.

ance application; and (2) litigating certain factual issues that, according to the town, had been litigated and decided by the court, *Purtill, J.*, in denying the plaintiff's appeal from the board's denial of the plaintiff's variance application. The town further maintained that, on the basis of the apparent resolution of those factual issues by the board and the court, *Purtill, J.*, the town was entitled to judgment as a matter of law.

The court, *Martin, J.*, granted the town's motion for summary judgment, reasoning that, "[b]ecause the viability of a taking claim based on the denial of a variance application hinges on whether the denial has deprived the property of any reasonable use, the determination of the issue of reasonable use is necessary and essential to the taking claim for purposes of issue preclusion." After reviewing the memorandum of decision on the merits of the plaintiff's appeal from the board's denial of the plaintiff's variance application and the record of the proceedings before the board, the court, *Martin, J.*, concluded that "[t]here [was] ample evidence . . . that the issue [of reasonable use] was raised, litigated and decided in both proceedings." The court, *Martin, J.*, also observed that the issues of whether a zoning board's denial of a variance application has deprived the applicant of any reasonable use of the applicant's property and whether that denial has resulted in a "practical confiscation" of the applicant's property are common both to a claim of undue hardship under the zoning regulations and to an inverse condemnation claim. The court, *Martin, J.*, further noted that, although the court, *Purtill, J.*, primarily had focused on the relatively narrow issue raised by the plaintiff's administrative appeal, namely, whether the record supported the board's denial of the plaintiff's variance application based on a perceived lack of hardship, the court, *Purtill, J.*, also expressly had considered, and rejected, the merits of the plaintiff's claim of a regulatory taking. In this regard,

the court, *Martin, J.*, referred to certain statements in the memorandum of decision of the court, *Purtill, J.*, to the effect that the plaintiff's alleged economic hardship arose not out of the necessity of complying with the town's zoning regulations but, rather, out of the necessity of complying with the regulations of the state department of environmental protection. After determining that this issue, like the reasonable use issue, was necessary and essential to the decision of the court, *Purtill, J.*, the court, *Martin, J.*, concluded: "[T]he plaintiff has failed to demonstrate the existence of genuine issues as to the facts of no deprivation of any reasonable use under the challenged zoning regulations and the source of claimed financial hardship experienced by the plaintiff. Because there is no genuine issue as to those facts and those issues or facts have been decided against the plaintiff by the board, supported by ample evidence and affirmed by the court [*Purtill, J.*] in the administrative appeal, the plaintiff's taking claim is foreclosed and the [town] is entitled to judgment in its favor as a matter of law."[13] This appeal followed.

On appeal, the plaintiff claims that the court, *Martin, J.*, improperly granted the town's motion for summary judgment. Specifically, the plaintiff contends that the

---

[13] In concluding that the town was entitled to judgment as a matter of law, the court, *Martin, J.*, noted the "significan[ce]" of certain language in *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 196. In particular, the court, *Martin, J.*, referred to the following language from our opinion in that case: "To the extent that the issues addressed in the inverse condemnation action overlap the administrative appeal, the parties would be free to request a consolidation of the cases. *Alternatively, they may employ the procedural tools of claim and issue preclusion to prevent duplicative litigation of the same issues or claims.*" (Emphasis added.) Id., 217. Although we recognize that this language is susceptible to the interpretation given it by the court, *Martin, J.*, our intention was not to suggest that principles of claim and issue preclusion *necessarily would be applicable* to the litigation between the parties, but, rather, that those principles, *if applicable, could* be used to avoid duplicative litigation.

court, *Martin, J.*, improperly concluded that the doctrine of collateral estoppel barred the plaintiff from litigating, in its inverse condemnation action, issues of fact that the board had resolved in denying the plaintiff's variance application and that the court, *Purtill, J.*, ostensibly had decided in denying the plaintiff's appeal from the adverse decision of the board. The plaintiff also contends that the court, *Hurley, J.*, improperly granted the town's motion to strike the plaintiff's claim from the jury docket. We address each of these claims in turn.

I

The plaintiff advances two primary arguments in support of its claim that the court, *Martin, J.*, improperly concluded that the doctrine of collateral estoppel barred the plaintiff from litigating, in its inverse condemnation action, factual issues that the board had resolved and that the court, *Purtill, J.*, ostensibly had decided in denying the plaintiff's administrative appeal. First, the plaintiff contends that the application of that doctrine violated its due process right to a de novo determination of the merits of its inverse condemnation claim. Second, the plaintiff contends that, even if principles of due process do not erect a per se bar to the application of the doctrine, the court, *Martin, J.*, improperly concluded that the issues of fact essential to the plaintiff's takings claim actually had been decided by the board and by the court, *Purtill, J.*, on appeal.

In response, the town claims that the court, *Martin, J.*, properly precluded the plaintiff from litigating the factual issues that, according to the town, were fully and fairly litigated before the board and subject to review by the court, *Purtill, J.*, on appeal. The town further claims that, in applying the doctrine of collateral estoppel, the court, *Martin, J.*, properly determined that the court, *Purtill, J.*, had resolved two particularly significant fac-

tual issues, the determination of which was binding on the parties to the plaintiff's inverse condemnation action, namely, that: (1) the board's denial of the plaintiff's variance application did not result in a practical confiscation of the plaintiff's property; and (2) the town's zoning regulations were not the source of the plaintiff's economic hardship. In the town's view, these purported findings are equally applicable to, and dispositive of, the plaintiff's inverse condemnation claim. We reject the town's arguments and conclude that: (1) for policy reasons, the doctrine of collateral estoppel does not bar the plaintiff from litigating, in its inverse condemnation action, any and all factual issues relevant to its claim of inverse condemnation regardless of whether those issues were decided by the board;[14] and (2) because none of the factual issues raised by the plaintiff in its inverse condemnation claim actually was litigated and decided in the administrative appeal, the decision of the court, *Purtill, J.*, cannot have preclusive effect as to the factual issues raised in the plaintiff's inverse condemnation action.[15]

The applicability of the doctrine of collateral estoppel, like the applicability of the closely related doctrine of res judicata,[16] presents a question of law that we

[14] Because we rest our conclusion on policy grounds, we need not address the town's contention that the issues decided by the board are coextensive with the issues raised in the plaintiff's inverse condemnation action.

[15] In light of our conclusions, we need not and, therefore, do not address the plaintiff's due process claim. E.g., *Stamford Hospital* v. *Vega*, 236 Conn. 646, 663, 674 A.2d 821 (1996) (courts generally "eschew unnecessary determinations of constitutional questions" [internal quotation marks omitted]).

[16] We note that the doctrines of collateral estoppel and res judicata, commonly referred to as issue preclusion and claim preclusion, respectively, "have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . . prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373, 727 A.2d 1245 (1999). Notwithstanding the differences between the two doctrines, we have noted their "conceptual closeness"; *Connecticut Natural Gas Corp.* v. *Miller*, 239 Conn. 313, 324 n.8, 684 A.2d 1173 (1996); as well

review de novo. E.g., *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 466, 778 A.2d 61 (2001); *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 594, 726 A.2d 502 (1999). The fundamental principles underlying the doctrine of collateral estoppel are well established. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. . . . Collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest."[17] (Citations omitted; internal quotation marks omitted.) *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 260, 773 A.2d 300 (2001).

Application of the doctrine of collateral estoppel is neither statutorily nor constitutionally mandated. The

as their similarity of purpose. See, e.g., *Dowling* v. *Finley Associates, Inc.*, supra, 373.

[17] In other words, "[the doctrine of] collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of th[at] issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373–74, 727 A.2d 1245 (1999).

doctrine, rather, is a judicially created rule of reason that is "enforced on public policy grounds." *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 127, 728 A.2d 1063 (1999). Accordingly, as we have observed in regard to the doctrine of res judicata, the decision whether to apply the doctrine of collateral estoppel in any particular case "should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest." (Citation omitted; internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 422–23, 752 A.2d 509 (2000).

We also have recognized, however, that "the application of the collateral estoppel doctrine has dramatic consequences for the party against whom the doctrine is applied. [Consequently] [c]ourts should be careful that the effect of the doctrine does not work an injustice." *Gladysz* v. *Planning & Zoning Commission*, supra, 256 Conn. 261. Thus, "[t]he doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more

important than the convenience afforded by finality in legal controversies." (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, supra, 253 Conn. 423; see also *Quinones Candelario* v. *Postmaster General of the United States*, 906 F.2d 798, 801 (1st Cir. 1990), cert. denied, 499 U.S. 919, 111 S. Ct. 1307, 113 L. Ed. 2d 242 (1991) (eschewing automatic or rigid application of doctrine of res judicata to determinations in administrative proceedings in face of contrary public policy). Accordingly, on occasion, we have recognized exceptions to the general policy favoring application of the doctrines of res judicata and collateral estoppel. See, e.g., *Isaac* v. *Truck Service, Inc.*, supra, 422, 429 (preclusion doctrines do not bar relitigation of property damage claim, which initially was litigated in small claims court, in subsequent personal injury action pending on regular civil docket even though both small claims and personal injury actions were predicated on same events); *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, supra, 248 Conn. 124–25 (second arbitration panel need not give preclusive effect to issues decided by first arbitration panel even when decisions of both panels involve same parties and interpretation of same contract provision); *State* v. *McDowell*, 242 Conn. 648, 654, 657, 699 A.2d 987 (1997) (doctrine of collateral estoppel does not bar state from bringing defendant to trial on criminal charges even though state had failed to prove those charges as basis for probation violation); *Connecticut Natural Gas Corp.* v. *Miller*, 239 Conn. 313, 323, 684 A.2d 1173 (1996) (doctrine of res judicata cannot be invoked to preclude relitigation of determination made in summary proceeding for appointment of receiver of rents brought pursuant to General Statutes § 16-262f); *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 598, 674 A.2d 1290 (1996) (doctrine of res judicata does not bar relitigation of tort claim that had been litigated

and decided in prior marital dissolution proceeding); *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 486–89, 628 A.2d 946 (1993) (adverse determination on issue in arbitration proceeding does not preclude employee from relitigating issue in subsequent action for retaliatory discharge). In establishing exceptions to the general application of the preclusion doctrines, we have identified several factors to consider, including: (1) whether another public policy interest outweighs the interest of finality served by the preclusion doctrines; see, e.g., *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, supra, 127–28; (2) whether the incentive to litigate a claim or issue differs as between the two forums; *Isaac* v. *Truck Service, Inc.*, supra, 428–29; *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 594; (3) whether the opportunity to litigate the claim or issue differs as between the two forums; see, e.g., *Connecticut Natural Gas Corp.* v. *Miller*, supra, 323; *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 489; and (4) whether the legislature has evinced an intent that the doctrine should not apply. See, e.g., *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 487–88.

As a general matter, administrative decisions are entitled to preclusive effect. E.g., *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 773, 770 A.2d 1 (2001); *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 129, 627 A.2d 1257 (1993); see *Wade's Dairy, Inc.* v. *Fairfield*, 181 Conn. 556, 561, 436 A.2d 24 (1980); *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 318, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); see also 2 Restatement (Second), Judgments § 83 (1), p. 266 (1982) ("a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifica-

tions, as a judgment of a court"). We are persuaded, however, that this case necessitates an exception to the general rule and, consequently, the plaintiff should not have been precluded from relitigating any issue relating to its constitutional takings claim that may have been decided in the course of the plaintiff's administrative efforts to obtain a zoning variance. We premise this conclusion primarily on the nature of the right that the plaintiff seeks to vindicate through its inverse condemnation claim and the particular administrative context in which the board made its findings in denying the plaintiff's variance application.

We begin by emphasizing, as we did in our opinion addressing the plaintiff's earlier appeal; see *Cumberland Farms, Inc.* v. *Groton,* supra, 247 Conn. 207–208; the distinction between an administrative appeal to the Superior Court from an adverse decision of a zoning board of appeals and an inverse condemnation action. Although our statutory scheme affords an aggrieved applicant the right to judicial review of the denial of a variance application, the scope of that review is limited. See id., 207. See generally General Statutes § 8-8. As we have indicated; see footnote 8 of this opinion; when, as in the present case, a zoning board of appeals has articulated its reasons for the action it has taken, the trial court's review of those reasons is limited to determining whether they are supported by the record and, if so, whether, under the applicable zoning regulations, the reasons given provide a legally sufficient basis for the zoning board's action. Thus, the trial court *does not find facts,* and it may not substitute its judgment for that of the zoning board.[18] E.g., *R & R Pool & Patio,*

___

[18] As reflected in its memorandum of decision, the court, *Purtill, J.,* acting in accordance with these principles, examined the record to determine whether the board's reasons for denying the plaintiff's variance application were supported by the record and whether the board's decision was reasonable and within the regulatory framework created by the town's zoning regulations. After answering these questions in the affirmative, the court's task was complete.

*Inc.* v. *Zoning Board of Appeals*, supra, 257 Conn. 470. Furthermore, no monetary remedy is available in an administrative appeal. E.g., *Cumberland Farms, Inc.* v. *Groton*, supra, 207. See generally General Statutes § 8-8 (k).

By contrast, a plaintiff in an inverse condemnation action seeks to demonstrate that the action of a zoning board of appeals resulted in a taking that, in turn, gives rise to a constitutional right to compensation. E.g., *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 207–208. A plaintiff who brings an inverse condemnation action may vindicate that right in the Superior Court, where the court[19] hears evidence, finds facts and determines whether the action of a zoning board amounts to a practical confiscation. See id., 208. If so, the court also determines what compensation is due. Id. If a plaintiff does not prevail in the Superior Court, he is entitled, as a matter of law, to appellate review. General Statutes § 52-263. With these distinctions in mind, we now turn to the issue of whether the court, *Martin, J.*, properly invoked the doctrine of collateral estoppel under the circumstances of this case.

As we noted previously, the court, *Purtill, J.*, applied a deferential standard of review to the board's factual findings. Therefore, to accord preclusive effect to the board's findings in the context presented would be to vest the board with the responsibility of deciding the facts underlying the plaintiff's constitutional claim and, in effect, would give the board the authority to settle the issue raised by that claim. Under such a regime, local zoning boards would have the power to decide virtually all inverse condemnation actions that are predicated on a claim that the denial of a variance application constitutes a practical confiscation. Such a result

---

[19] In part II of this opinion, we reject the plaintiff's contention that an inverse condemnation claim gives rise to a right to a jury trial.

would run counter to the well established common-law principle that administrative agencies lack the authority to determine constitutional questions. See, e.g., *Genden* v. *American Airlines*, 257 Conn. 520, 525, 778 A.2d 58 (2001); *Giaimo* v. *New Haven*, 257 Conn. 481, 490 n.8, 778 A.2d 33 (2001); *Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 551, 552 A.2d 796 (1989), overruled on other grounds, *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 715 A.2d 46 (1998); *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 343–44, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985). Moreover, we are particularly reluctant to relegate to zoning boards the responsibility for constitutional fact-finding in view of the fact that the citizen volunteers who compose such boards generally are not land use professionals but, rather, "laypersons with little or no technical expertise."[20] *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 341, 627 A.2d 909 (1993); see also *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 198–99 n.7, 635 A.2d 1220 (1994) ("local land use commission [is] composed of laypersons whose procedural savoir-faire may not rise to the sophisticated level needed to achieve strict compliance with the statutory directions under which they operate"); *Carini* v. *Zoning Board of Appeals*, 164 Conn. 169, 172, 319 A.2d 390 (1972), cert. denied, 414 U.S. 831, 94 S. Ct. 64, 38 L. Ed. 2d 66 (1973) ("public-spirited citizens volunteer to perform their civic duties in serving on boards such as those involving zoning"). Furthermore, although members of local zoning boards undoubtedly strive to attain a high degree of impartiality, especially when acting in their adjudicative capacity, they nevertheless are governed by rules that, in

---

[20] We, of course, do not denigrate the work of such boards or their personnel, nor do we mean to suggest that they lack the capability of effectively addressing the land use matters with which they are statutorily entrusted. Our observation regarding their relative lack of expertise is limited to the determination of issues of constitutional magnitude.

contrast to those governing court proceedings, encourage input by members of the general public with an interest in the outcome of the board's deliberations. See General Statutes § 8-7;[21] see also *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 739, 724 A.2d 1108 (1999) ("[b]ecause of the public impact of land use decisions, Connecticut's governing statutory scheme promotes public participation in such decision making").

Our conclusion is reinforced by virtue of the fact that, in the present case, *the board's decision itself is the action that gives rise to the constitutional claim.* Cf. *Cumberland Farms, Inc.* v. *Groton,* supra, 247 Conn. 208. Thus, this case presents a fact pattern that is readily distinguishable from the scenario involving a proceeding in which the doctrine of collateral estoppel is applied to preclude the relitigation of certain factual issues and in which the claim being asserted does not arise out of the agency's actions. See, e.g., *University of Tennessee* v. *Elliott,* 478 U.S. 788, 796–99, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986) (decision in state university's administrative proceeding on issue of whether university was motivated by racial prejudice

---

[21] General Statutes § 8-7 provides in relevant part: "An appeal may be taken to the zoning board of appeals by any person aggrieved or by any officer, department, board or bureau of any municipality aggrieved and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds thereof. . . . Such board shall, within the period of time permitted under section 8-7d, hear such appeal and give due notice thereof to the parties. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before such hearing. In addition to such notice, such board may, by regulation, provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the hearing. At such hearing any party may appear in person and may be represented by agent or by attorney. . . ."

when it discharged employee should be accorded same preclusive effect that would be accorded in state court in subsequent federal action brought pursuant to 42 U.S.C. § 1983);[22] *Aunyx Corp.* v. *Canon U.S.A., Inc.*, 978 F.2d 3, 7–8 (1st Cir. 1992), cert. denied, 507 U.S. 973, 113 S. Ct. 1416, 122 L. Ed. 2d 786 (1993) (decision of International Trade Commission accorded preclusive effect in subsequent antitrust action); *Crot* v. *Byrne*, 957 F.2d 394, 396–97 (7th Cir. 1992) (state industrial commission's finding in workers' compensation proceeding that plaintiff's discharge from employment did not cause his subsequent stroke accorded preclusive effect in subsequent action involving claim that plaintiff's discharge was politically motivated); *Lafayette* v. *General Dynamics Corp.*, supra, 255 Conn. 764 (decision of United States Department of Labor administrative law judge awarding death benefits to plaintiff under federal Longshore and Harbor Workers' Compensation Act accorded preclusive effect in action for survivor's benefits under state Workers' Compensation Act). Moreover, as we mentioned previously, the board's decision is subject to highly deferential judicial review.[23]

[22] In *University of Tennessee* v. *Elliott*, supra, 478 U.S. 799, the United States Supreme Court concluded that, in actions brought pursuant to 42 U.S.C. § 1983 in federal court, a federal court must accord a state administrative agency's resolution of disputed factual issues the same preclusive effect that it would be entitled to in state court, at least when the agency has acted in a judicial capacity. The court reached this conclusion as a matter of statutory interpretation, concluding that Congress had not evinced an intent to preclude application of the preclusion doctrines in actions brought under 42 U.S.C. § 1983. Id., 797.

[23] In addition, we note that, at least in some cases, a property owner seeking a variance may have less incentive to litigate fully a zoning variance claim rather than an inverse condemnation claim. This lesser incentive may be attributed to the large degree of discretion that is vested in zoning boards, to the fact that the boards are comprised of other property owners rather than land use experts and to the substantial deference to which the board's findings are entitled on appeal. Moreover, depending upon the nature of the variance sought and the composition of the zoning board, the property owner reasonably may believe that he will get a fairer hearing in court than before the board. Although none of these reasons is dispositive of the issue,

The town claims that even if the board's resolution of factual issues is not entitled to preclusive effect, the court, *Martin, J.*, properly gave such effect to certain findings ostensibly made by the court, *Purtill, J.*, in rejecting the plaintiff's administrative appeal. Specifically, the town contends that the memorandum of decision of the court, *Purtill, J.*, reflects the following findings: (1) that the board's denial of the plaintiff's variance application did not result in a practical confiscation; and (2) that certain state and federal environmental regulations, and not the town's zoning regulations, constituted the source of the plaintiff's alleged hardship.[24] The town further contends that these findings are dispositive of the plaintiff's inverse condemnation claim.

We disagree with the town's contention. With respect to the issue of practical confiscation, the passing reference to a regulatory taking found in the memorandum of decision of the court, *Purtill, J.*; see footnote 24 of this opinion; reasonably cannot be considered a finding on that issue. Moreover, that issue was not raised by the plaintiff in its administrative appeal,[25] and it, there-

they lend some support to the conclusion that it is inappropriate to apply the doctrine of collateral estoppel under the circumstances of the present case.

[24] The town's claims are predicated on language contained in that portion of the memorandum of decision of the court, *Purtill, J.*, in which the court, after analyzing the *board's* findings regarding the absence of a cognizable hardship, concluded that "it cannot be found that [*the*] . . . *board abused its authority in determining that [the] plaintiff had failed to prove hardship.*" (Emphasis added.) The specific passage that the town relies on provides: "It is well settled that an ordinance which permanently restricts the use of property for any reasonable purpose goes beyond permissible regulation and amounts to a taking. . . .

"[The] [p]laintiff's difficulty, however, arises out of the requirement that the permanent restriction must arise out of the zoning regulations." (Citations omitted.) The court, *Purtill, J.*, then found that the plaintiff's alleged hardship "arises out of the fact that . . . state and federal regulations will require it to expend a considerable amount of money to continue with gasoline sales."

[25] Although the brief that the plaintiff filed in its administrative appeal does refer to the principle of practical confiscation, that reference was made

fore, was not an issue subject to review by the court, *Purtill, J.*[26] Consequently, even if the court, *Purtill, J.*, had intended to make a finding on the issue—and it is clear from the record that it did not—any such finding would be dictum and, therefore, not entitled to preclusive effect. See *Leydon* v. *Greenwich*, 257 Conn. 318, 357 n.46, 777 A.2d 552 (2001).

For similar reasons, the observation of the court, *Purtill, J.*, that the source of the plaintiff's alleged hardship was not the town's zoning regulations but, rather, state and federal environmental regulations, also does not have preclusive effect in the plaintiff's inverse condemnation action. Even if we assume, arguendo, that the court's statement on that issue can be characterized as a finding, neither of the parties raised that issue during the proceedings before the board, and it was not addressed in the board's decision. As we have indicated, the doctrine of collateral estoppel is inapplicable

in the context of the plaintiff's claim that the board had failed to give due weight to certain expert testimony adduced by the plaintiff regarding the extreme financial hardship that the plaintiff would suffer if its variance application were denied. The plaintiff did not raise a constitutional takings claim in its administrative appeal, however.

[26] In *Scalzo* v. *Danbury*, 224 Conn. 124, 132 n.7, 617 A.2d 440 (1992), we stated in dictum that, if a property owner aggrieved by a zoning board's denial of his application for a variance fails to raise a takings claim in his administrative appeal from the denial of his variance application, he then would be barred under the doctrine of *claim* preclusion from bringing an independent inverse condemnation action. This statement runs counter to our reasoning in *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 196, in which we stated: "Although action by the Superior Court favorable to the plaintiff in the plaintiff's administrative appeal might eliminate the plaintiff's claim of compensation for a complete taking, the plaintiff might nonetheless be entitled to compensation for the temporary taking that wrongly denied the plaintiff's use of its property while the appeal was pending." Id., 208. Moreover, in light of the significant differences between an inverse condemnation action and an administrative appeal from an adverse decision of a zoning board, we see no reason why a property owner who wishes to pursue both of those separate and independent legal avenues should be required to seek a consolidation of both actions. We therefore repudiate any suggestion to the contrary in *Scalzo*.

in such circumstances.[27] See, e.g., *Dowling* v. *Finley Associates, Inc.*, supra, 248 Conn. 374 ("[t]o assert successfully the doctrine of issue preclusion . . . [it] must [be] establishe[d] that the issue sought to be foreclosed actually was litigated and determined in the prior action").

We conclude, therefore, that the plaintiff is entitled to a de novo review of the factual issues underlying its inverse condemnation claim, unfettered by the board's previous resolution of any factual issues. We also conclude that the decision of the court, *Purtill, J.*, to deny the plaintiff's administrative appeal does not preclude the plaintiff from litigating any factual issues in its inverse condemnation action.[28] Because the court, *Mar-*

---

[27] The town also asserts that the plaintiff could have avoided the application of the doctrine of collateral estoppel by seeking to have its inverse condemnation claim consolidated with its administrative appeal, thereby permitting the court, *Purtill, J.*, to entertain both matters. Of course, if such a consolidation had been sought and granted, the plaintiff would have been entitled to a de novo consideration of any facts relevant to its inverse condemnation claim. Although we agree that the plaintiff *could have sought* to consolidate the two cases; see *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 217 ("[t]o the extent that the issues addressed in the inverse condemnation action overlap the administrative appeal, the parties *would be free to request a consolidation* of the cases" [emphasis added]); it was not required to do so.

[28] We note that our conclusions are not contrary to our holding in *Scalzo* v. *Danbury*, 224 Conn. 124, 617 A.2d 440 (1992). In *Scalzo*, the plaintiff, Peter V. Scalzo, had sought both a variance and an amendment to the Danbury zoning regulations to permit him to gain access to certain residential property via property located in an industrial zone. The defendant zoning board of appeals denied Scalzo's application for a variance, and the defendant zoning commission denied his request for an amendment to the zoning regulations. Id., 126. Scalzo filed two separate appeals, one from the adverse decision of the zoning board and one from the adverse decision of the zoning commission. Id. In both appeals, Scalzo claimed, inter alia, that the zoning authorities had acted illegally, arbitrarily and in abuse of their discretion because their actions constituted an unreasonable taking of Scalzo's property. Id. The trial court, *Stodolink, J.*, rejected both appeals, concluding, inter alia, that neither the denial of the variance application nor the denial of the amendment application resulted in a taking. Id. While those administrative appeals were pending, Scalzo filed an independent action against the city of Danbury, its zoning board and its zoning commission (the defendants),

*tin, J.*, improperly applied the doctrine of collateral estoppel in granting the town's motion for summary judgment, the judgment of the court, *Martin, J.*, must be reversed and the case must be remanded to the trial court for a determination on the merits of the issues raised by the plaintiff in its inverse condemnation action.

## II

In light of our conclusion in part I of this opinion, we also must decide whether, contrary to the decision of the court, *Hurley, J.*, to grant the town's motion to strike the plaintiff's case from the jury docket, the plaintiff's inverse condemnation action gives rise to a right to a jury trial. We agree with the court, *Hurley, J.*, that the plaintiff does not have a right to a jury trial in connection with its inverse condemnation action.

### A

Whether a property owner has a right, pursuant to article first, § 19, of the constitution of Connecticut and

claiming that the adverse actions of the board and the commission had resulted in a taking of his property for which he was entitled to compensation. Id., 126–27. The trial court, *Pickett, J.*, granted the defendants' motion for summary judgment on the ground that Scalzo's takings claim had been fully and fairly litigated in Scalzo's previous administrative appeals and, consequently, Scalzo was precluded from relitigating that claim in connection with his regulatory takings action. Id., 127.

On appeal to this court, Scalzo "conceded . . . that the taking issue had been litigated and determined by a valid and final judgment." Id., 129. Scalzo claimed, however, that the decision of the court, *Stodolink, J.*, to reject his takings claim was not essential to the resolution of his administrative appeals because the court had found another basis for upholding the decisions of the two zoning authorities. Id. We determined, contrary to Scalzo's claim, that the court's finding was essential to the resolution of Scalzo's administrative appeals; id., 132; a conclusion that we have no occasion to reconsider in this appeal. In *Scalzo*, however, we were not asked to decide the issue presented by this appeal, namely, whether the doctrine of collateral estoppel properly may be invoked to preclude the plaintiff from litigating certain factual issues relating to its inverse condemnation claim. Because *Scalzo* involved a challenge to the propriety of the *manner* in which the doctrine of collateral estoppel had been applied, and not to the *applicability* of the

General Statutes § 52-215, to a jury trial in an inverse condemnation action is an issue of first impression. Our resolution of this issue, however, is guided by well settled principles. "[A]rticle first, § 19, of the Connecticut constitution . . . guarantees the right to a jury trial in all cases for which such a right existed at the time of the adoption of that constitutional provision in 1818 . . . [or] in cases that are substantially similar to cases for which the right to a jury trial existed at common law in 1818. . . . Because at common law only legal claims were tried to a jury, the state constitutional right to a trial by jury does not extend to equitable claims. . . . Accordingly, in determining whether a party has a right to a trial by jury under the state constitution and . . . § 52-215, we must ascertain whether the action being tried . . . has roots in the common law, and if so, whether the remedy involved was one in law or equity. If the action existed at common law and involved a legal remedy, the right to a jury trial exists . . . ." (Citations omitted; internal quotation marks omitted.) *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 153–54, 645 A.2d 505 (1994). The test, then, "is whether the issue raised in the action is substantially of the same nature or is such an issue as prior to 1818 would have been triable to a jury." (Internal quotation marks omitted.) *Skinner* v. *Angliker*, 211 Conn. 370, 375, 559 A.2d 701 (1989). This test is "flexible and may require a jury in a new cause of action, not in existence in [1818], if it involves rights and remedies of the sort traditionally enforced in an action at law or if its nearest historical analogue is an action at common law." (Internal quotation marks omitted.) Id., 377.

The federal courts apply a similar test when determining whether the right to a jury trial exists under the

doctrine in the first instance, we simply did not consider the issue raised by this appeal in *Scalzo*.

seventh amendment to the United States constitution.[29] See, e.g., *Swanson* v. *Boschen*, 143 Conn. 159, 162, 120 A.2d 546 (1956) (recognizing similarity in federal and state tests). Under the federal approach, federal courts consider whether the cause of action was one tried at law when the seventh amendment was adopted in 1791 or whether the action is substantially similar to such an action. See, e.g., *Markman* v. *Westview Instruments, Inc.*, 517 U.S. 370, 376, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996); *Curtis* v. *Loether*, 415 U.S. 189, 193, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974). Accordingly, although the seventh amendment guarantee to a jury trial applies only to actions in federal courts; e.g., *GTFM, LLC* v. *TKN Sales, Inc.*, 257 F.3d 235, 245 (2d Cir. 2001); *Skinner* v. *Angliker*, supra, 211 Conn. 379 n.9; we nevertheless may look to federal case law for guidance in determining whether the plaintiff is entitled to a jury trial under article first, § 19, and § 52-215, in light of the similarity between the federal and state tests.

## B

Inverse condemnation is a modern day concept, unknown at the time of the adoption of the Connecticut constitutional provision guaranteeing a jury trial. See *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 711–17, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) (opinion announcing judgment) (suggesting that claim for inverse condemnation did not exist at common law prior to 1791); *Fichter* v. *Board of Environmental Protection*, Civ. A. CV-90-624, 2000 WL 33676710, *2 (Me. Super. May 1, 2000) ("inverse condemnation cases did not exist when Maine became a state"). We therefore must determine whether an inverse condemnation action is analogous to any com-

---

[29] The seventh amendment to the United States constitution provides in relevant part: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."

mon-law action that was triable to a jury prior to 1818, the year in which the provision of our state constitution guaranteeing the right to a jury trial in civil cases was adopted. We begin by examining the nature of the action at issue. Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." (Internal quotation marks omitted.) *United States* v. *Clarke*, 445 U.S. 253, 257, 100 S. Ct. 1127, 63 L. Ed. 2d 373 (1980); see also *Florida East Coast Properties, Inc.* v. *Metropolitan Dade County*, 572 F.2d 1108, 1111 (5th Cir.), cert. denied, 439 U.S. 894, 99 S. Ct. 253, 58 L. Ed. 2d 240 (1978); *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 284, 721 A.2d 1197 (1998). An inverse condemnation claim accrues "when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding . . . ." (Internal quotation marks omitted.) *Cohen* v. *Hartford*, 244 Conn. 206, 220, 710 A.2d 746 (1998). Accordingly, an inverse condemnation action has been aptly described as "an eminent domain proceeding initiated by the property owner rather than the condemnor." (Internal quotation marks omitted.) *Marshall* v. *Dept. of Water & Power*, 219 Cal. App. 3d 1124, 1138, 268 Cal. Rptr. 559 (1990).

The close relationship between eminent domain and inverse condemnation is further evidenced by the fact that the evolution of inverse condemnation as a cause of action may be traced directly to eminent domain jurisprudence.[30] Moreover, the legal principles that

---

[30] "At the time of the writing of the [federal] Constitution and for many years thereafter a government taking meant exactly that—the Government would physically occupy the land. . . . Much of the law of eminent domain—both statutory and case—developed for the purpose of providing the procedural structure for government takings; the main issue in the cases was what compensation was just. . . .

apply in eminent domain proceedings generally apply

"As government activities expanded, situations arose in which government action resulted in an invasion of an owner's private property, but the government had not undertaken the procedural steps called for by statute to acquire the affected property interests. For example, the government's roadbuilding activity on A's land, the taking of which was authorized and paid for by the government, might cause permanent flooding on the nearby land of B. The suit by B, to require the government to pay just compensation for the taking of B's property as well, acquired the name of inverse condemnation." (Citations omitted.) *Hendler* v. *United States*, 952 F.2d 1364, 1371 (Fed. Cir. 1991).

Initially, however, the United States Supreme Court "did not view overly restrictive regulation as triggering an award of compensation, but as an invalid means of accomplishing what constitutionally can be accomplished only through the exercise of eminent domain. See, e.g., *Block* v. *Hirsh*, 256 U.S. 135, 156 [41 S. Ct. 458, 65 L. Ed. 865] (1921); *Hudson County Water Co.* v. *McCarter*, 209 U.S. 349, 355 [28 S. Ct. 529, 52 L. Ed. 828] (1908); *Martin* v. *District of Columbia*, 205 U.S. 135, 139 [27 S. Ct. 440, 51 L. Ed. 743] (1907)." *Williamson County Regional Planning Commission* v. *Hamilton Bank*, 473 U.S. 172, 199, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985). Thus, "for many years a landowner's sole relief in a constitutional challenge based on a land use regulation was invalidation of the regulation. . . . The constitutional alternative provided by the Fifth Amendment of upholding an overly-intrusive regulation by treating it as a lawful taking requiring just compensation was not an issue that attracted judicial attention." (Citation omitted.) *Hendler* v. *United States*, supra, 952 F.2d 1372.

This court's first recognition of the principles underlying a regulatory taking traces its roots to *State* v. *Hillman*, 110 Conn. 92, 105, 147 A. 294 (1929). For many years after *Hillman*, this court dealt with takings resulting from the application of land use regulations by invalidating the applicable ordinance or amendment thereto. See, e.g., *Corthouts* v. *Newington*, 140 Conn. 284, 290, 99 A.2d 112 (1953) (invalidating amendment to zoning ordinance "so far as it affect[ed] the plaintiff's property"); cf. *Strain* v. *Mims*, 123 Conn. 275, 290–91, 193 A. 754 (1937). In 1971, our legislature authorized the payment of compensation to aggrieved property owners who could establish a regulatory taking. See Public Acts 1971, No. 518, § 2, codified at General Statutes § 48-17b. Even after the legislature granted such authority, however, this court noted that injunctive relief ordinarily would be the proper remedy. See *DeMello* v. *Plainville*, 170 Conn. 675, 680, 368 A.2d 71 (1976) ("[G]overnmental action under the guise of the police power which is claimed to be arbitrary and confiscatory may be challenged by seeking injunctive or declaratory relief, or as a defense to enforcement proceedings. But such an abuse of the police power does not generally give rise to a cause of action for compensatory damages."). See generally *Laurel, Inc.* v. *State*, 169 Conn. 195, 200–202, 362 A.2d 1383 (1975) (discussing development of takings jurisprudence).

with equal force in inverse condemnation actions. See *First English Evangelical Lutheran Church* v. *Los Angeles*, 482 U.S. 304, 315, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987) ("The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners [does] not change the essential nature of the claim. The form of the remedy did not qualify the right. It rested upon the Fifth Amendment." [Internal quotation marks omitted.]); *New Port Largo, Inc.* v. *Monroe County*, 95 F.3d 1084, 1092 (11th Cir. 1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2514, 138 L. Ed. 2d 1016 (1997) ("[w]e have discovered no indication that the rule in regulatory takings cases differs from the general eminent domain framework"); *Citino* v. *Redevelopment Agency*, supra, 51 Conn. App. 285 ("eminent domain and an inverse condemnation case are for practical purposes alike"). But see *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, supra, 526 U.S. 712–15 (opinion announcing judgment) (identifying differences between direct and inverse condemnation); *Agins* v. *Tiburon*, 447 U.S. 255, 258 n.2, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980) (distinguishing inverse condemnation and eminent domain).

It is apparent, therefore, that an inverse condemnation action bears a close and substantial relationship

---

In 1987, the United States Supreme Court, in *First English Evangelical Lutheran Church* v. *Los Angeles*, 482 U.S. 304, 319–20, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987), squarely addressed the issue of compensation for a regulatory taking. In that case, "[t]he regulation at issue prevented the landowner from rebuilding after a flood destroyed buildings on the property. . . .

"The state argued that the landowner's remedy [for the regulatory taking] could be limited by state law simply to a determination of [the] validity of the uncompensated regulatory enactment; only if the state insisted on enforcement *after* the regulation was judicially determined to require compensation would compensation be due. The [United States] Supreme Court rejected that reading of the Fifth Amendment. The Constitution, said the Court, requires just compensation for a regulatory taking from the date it occurs until the date of the regulation's rescission or amendment." (Citation omitted; emphasis in original.) *Hendler* v. *United States*, supra, 952 F.2d 1373.

and resemblance to an eminent domain proceeding. Because the principles underlying a constitutional taking by eminent domain or inverse condemnation are essentially sui generis, it is not surprising that there is no other claim or cause of action, extant before or after 1818, that is comparable to an inverse condemnation action.

Our determination that an inverse condemnation action is analogous to an eminent domain proceeding—and to no other cause of action that existed prior to 1818—is fatal to the plaintiff's claim that it is entitled to a jury trial, for it is well settled that eminent domain proceedings are equitable in nature. *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 828, 776 A.2d 1068 (2001) ("[t]he question of what is just compensation [in an eminent domain proceeding] is an equitable one rather than a strictly legal or technical one" [internal quotation marks omitted]); *Commissioner of Transportation* v. *Towpath Associates*, 255 Conn. 529, 540, 767 A.2d 1169 (2001) (same); *Ives* v. *Addison*, 155 Conn. 335, 341, 232 A.2d 311 (1967) (same). Consequently, it is well settled, under both federal and Connecticut law, that no right to a jury trial existed at common law in eminent domain proceedings.[31] E.g., *United States* v. *Reynolds*, 397 U.S. 14, 18, 90 S. Ct. 803, 25 L. Ed. 2d 12 (1970); *Bauman* v. *Ross*, 167 U.S. 548, 593, 17 S. Ct. 966, 42 L. Ed. 270 (1897); *Meigs* v. *Theis*, 102 Conn. 579, 594, 129 A. 551 (1925); *New York, N. H. & H. R.R. Co.* v. *Long*, 69 Conn. 424, 437, 37 A. 1070 (1897). Because an inverse condemnation action has no common-law analogue that was triable to a jury prior to 1818—indeed, its nearest

---

[31] The prevailing practice in the original thirteen states when those states began to adopt their respective state constitutions was to refer the question of damages arising from a taking to a commission comprised of between three and five viewers or appraisers. See 1A P. Nichols, Eminent Domain (3d Ed. Rev. 2000) § 4.105 [1], p. 4-115.

historical analogue, eminent domain, gives rise to a proceeding in equity—we reject the plaintiff's claim that it is entitled to a jury trial in the present case.[32]

## C

In support of its claim that it is entitled to a jury trial, the plaintiff relies primarily on *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, supra, 526 U.S. 687 (*Del Monte Dunes*). The court's conclusion in *Del Monte Dunes*, however, does not persuade us that the plaintiff is entitled to a jury trial in the present action.

In *Del Monte Dunes*, the aggrieved property owner, Del Monte Dunes at Monterey, Ltd. (Del Monte Dunes), filed suit against the city of Monterey (city) under 42 U.S.C. § 1983, claiming, inter alia, that the city had effected a regulatory taking by rejecting numerous applications for authorization to develop certain property that were submitted by Del Monte Dunes and its predecessor in interest. Id., 695–98 (opinion announcing judgment). A jury awarded Del Monte Dunes damages

[32] In an inverse condemnation action, the court is required to determine, first, whether the regulatory action gives rise to an unconstitutional taking. Although this determination may involve fact-finding, that circumstance alone does not suffice to entitle the plaintiff in such an action to a jury trial. See, e.g., *Meigs* v. *Theis*, supra, 102 Conn. 594 ("proceedings for condemnation of land . . . [are also actions in] which serious questions of fact might be contested; yet in such matters there has never been any question as to the right of the tribunal provided to try issues of fact without a jury"). Indeed, it is not uncommon for trial courts to engage in fact-finding in eminent domain proceedings. See, e.g., *Commissioner of Transportation* v. *Towpath Associates*, supra, 255 Conn. 554 (reviewing trial court's findings of fact in eminent domain proceeding regarding value of condemned property); *Greene* v. *Burns*, 221 Conn. 736, 748, 607 A.2d 402 (1992) (reviewing trial court's findings of fact in eminent domain proceeding regarding probability of future zone change); *Bugryn* v. *Bristol*, 63 Conn. App. 98, 103–104, 774 A.2d 1042, cert. denied, 256 Conn. 927, 776 A.2d 1143, cert. denied, 534 U.S. 1019, 122 S. Ct. 544, 151 L. Ed. 2d 422 (2001) (reviewing trial court's findings of fact in eminent domain proceeding concerning whether condemnation of property for development as industrial park constituted public use and whether condemnation would have benefited private interests).

on its takings claim; id., 701 (opinion announcing judgment); and the United States District Court for the Northern District of California rendered judgment in accordance with the jury's verdict. See id. The city appealed to the Ninth Circuit Court of Appeals, claiming, inter alia, that Del Monte Dunes' takings claim did not give rise to a right to a jury trial. *Del Monte Dunes at Monterey, Ltd.* v. *Monterey,* 95 F.3d 1422, 1425 (9th Cir. 1996). The Ninth Circuit rejected the city's contention and affirmed. Id., 1427–28, 1430, 1435. A majority of the United States Supreme Court agreed that Del Monte Dunes was entitled to a jury trial on its action under 42 U.S.C. § 1983 seeking damages for an unconstitutional regulatory taking. *Monterey* v. *Del Monte Dunes at Monterey, Ltd.,* supra, 526 U.S. 721–22 (opinion announcing judgment); id., 732 (Scalia, J., concurring in part and concurring in the judgment).

In evaluating the jury trial issue, the court engaged in a historical analysis; see id., 712–16 (opinion announcing judgment); see also part II A of this opinion; to determine whether Del Monte Dunes' claim under 42 U.S.C. § 1983 was analogous to a cause of action that was "tried at law at the time of the founding [of the seventh amendment] . . . ." *Monterey* v. *Del Monte Dunes at Monterey, Ltd.,* supra, 526 U.S. 708 (opinion announcing judgment), quoting *Markman* v. *Westview Instruments, Inc.,* supra, 517 U.S. 376. The court further explained that the seventh amendment "jury guarantee extends to statutory claims unknown to the common law, [e.g., a claim under 42 U.S.C. § 1983] so long as the claims can be said to soun[d] basically in tort, and seek legal relief." (Internal quotation marks omitted.) *Monterey* v. *Del Monte Dunes at Monterey, Ltd.,* supra, 709 (opinion announcing judgment).

In concluding that Del Monte Dunes' claim met that test, the court relied on two important and related considerations, the first of which is the "essential character

of [42 U.S.C. § 1983] . . . ." Id. After noting the importance of that consideration to its seventh amendment
analysis, the court stated: "[T]here can be no doubt that
claims brought pursuant to [42 U.S.C.] § 1983 sound in
tort. Just as common-law tort actions provide redress
for interference with protected personal or property
interests, [42 U.S.C.] § 1983 provides relief for invasions
of rights protected under federal law. . . . [Thus, the
court has] repeatedly noted that 42 U.S.C. § 1983 creates
a species of tort liability . . . and ha[s] interpreted the
statute in light of the background of tort liability . . . .
[The court's] settled understanding of [42 U.S.C.] § 1983
and the Seventh Amendment thus compel[s] the conclusion that a suit for legal relief brought under the statute
is an action at law." (Citations omitted; internal quotation marks omitted.) Id., 709–10 (opinion announcing
judgment).

In concluding that Del Monte Dunes had "sought legal
relief"; id., 710; the court identified a second factor
critical to its analysis: when the applications of Del
Monte Dunes and its predecessor in interest were
denied by the city, California law provided no remedy
for regulatory takings. Id. As the court explained, "[Del
Monte Dunes] was entitled to proceed in federal court
under [42 U.S.C.] § 1983 because, at the time of the
city's actions, the [s]tate of California did not provide
a compensatory remedy for temporary regulatory takings. . . . The constitutional injury alleged, therefore,
is not that property was taken but that it was taken
without just compensation. Had the city paid for the
property *or had an adequate postdeprivation remedy
been available, Del Monte Dunes would have suffered
no constitutional injury from the taking alone.*[33] . . .

---

[33] In *Williamson County Regional Planning Commission* v. *Hamilton
Bank*, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), the court held that,
"if a State provides an adequate procedure for seeking just compensation, the
property owner cannot claim a violation of the Just Compensation Clause
[of the fifth amendment, made applicable to the states through the fourteenth
amendment] until it has used the procedure and been denied just compensa-

Because its statutory action did not accrue until it was denied just compensation, in a strict sense Del Monte Dunes sought not just compensation *per se* but rather damages for the unconstitutional denial of such compensation. Damages for a constitutional violation are a legal remedy." (Citations omitted; emphasis altered; internal quotation marks omitted.) Id.

The court in *Del Monte Dunes* repeatedly underscored the significance of the fact that California law afforded Del Monte Dunes no procedure for obtaining compensation for a regulatory taking. E.g., id., 712 (opinion announcing judgment) ("[w]here, as here, the government not only denies liability but fails to provide an adequate postdeprivation remedy [thus refusing to submit the question of liability to an impartial arbiter], the disadvantage to the owner becomes all the greater"); id., 715 (opinion announcing judgment) ("[i]n this case . . . Del Monte Dunes was denied not only its property but also just compensation or even an adequate forum for seeking it"); id., 717 (opinion announcing judgment) ("Although the government acts lawfully when, pursuant to proper authorization, it takes property and provides just compensation, the government's action is lawful solely because it assumes a duty, imposed by the Constitution, to provide just compensation. . . . When the government repudiates this duty, either by denying just compensation in fact or by refusing to provide procedures through which compensation may be sought, it violates the Constitution. In those circumstances the government's actions are not only unconstitutional but unlawful and tortious as well."

tion." Id., 195. In other words, "the State's action is not complete in the sense of causing a constitutional injury unless or until the state fails to provide an adequate postdeprivation remedy for the property loss. . . . [B]ecause the Constitution does not require pretaking compensation . . . [constitutional requirements are] satisfied by a reasonable and adequate provision for obtaining compensation after the taking . . . ." (Citation omitted; internal quotation marks omitted.) Id.

[Citations omitted.]). Indeed, the court suggested that the absence of such a remedy "is the gravamen of the § 1983 claim." Id., 715 (opinion announcing judgment).

By contrast, the plaintiff in the present action has an adequate postdeprivation remedy available to it, namely, an inverse condemnation action.[34] Thus, if the plaintiff is successful in establishing the elements of its claim of a regulatory taking, it will be awarded just compensation for that taking in accordance with constitutional requirements.[35] In other words, the taking, if it occurred, *could not be deemed tortious or otherwise wrongful because the plaintiff has an adequate postdeprivation remedy to obtain just compensation for the taking.* See *Williamson County Regional Planning Commission* v. *Hamilton Bank*, 473 U.S. 172, 194, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985) ("The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. . . . [A]ll that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." [Citation omitted; internal quotation marks omitted.]); cf. *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, supra, 526 U.S. 717 (opinion announcing judg-

[34] In *Williamson County Regional Planning Commission* v. *Hamilton Bank*, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), the court observed that a property owner who may obtain recovery for a regulatory taking through an inverse condemnation action has an adequate postdeprivation remedy. See id., 194–95.

[35] We note, moreover, that, under General Statutes § 48-17b, a property owner who successfully prosecutes an inverse condemnation claim may receive, in addition to compensation for the taking, reimbursement for certain costs and expenses. General Statutes § 48-17b provides: "The state court rendering a judgment for the plaintiff in an inverse condemnation proceeding brought against the state by the owner of real property, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceeding."

ment) (when government takes property and either denies just compensation or refuses to provide property owner with procedures through which he may obtain compensation, it not only has acted unconstitutionally, but "unlawful and tortuous as well"). Accordingly, in the present case, the plaintiff does not allege tortious conduct but, rather, lawful conduct entitling it to compensation. Cf. *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, supra, 747 n.7 (Souter, J., concurring in part and dissenting in part) (noting distinction between situation in which property owner seeks to enjoin regulatory taking and situation in which property owner seeks to obtain compensation). Therefore, the analogy to a tort action is inapposite. Furthermore, the plaintiff's common-law inverse condemnation action, in contrast to the § 1983 action brought by Del Monte Dunes, traditionally has not been characterized as an action sounding in tort. To the contrary, an inverse condemnation action is analogous to an eminent domain proceeding, which is equitable in nature, and not to any action at law.[36] See part II B of this opinion.

---

[36] We acknowledge that a plurality of the court in *Del Monte Dunes* addressed at some length the distinctions between inverse condemnation actions and eminent domain proceedings. See generally *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, supra, 526 U.S. 711–15 (opinion announcing judgment). The plurality did so, however, in order to address the city's contention that the two actions were analogous; id., 711 (opinion announcing judgment); as well as to respond to the separate concurring and dissenting opinion of Justice Souter, which was joined by Justices O'Connor, Ginsburg and Breyer, in which Justice Souter concluded that the city's analogy was an appropriate one. See id., 734–36, 739–40 (Souter, J., concurring in part and dissenting in part). The plurality indicated that, even though it addressed the differences between direct and inverse condemnation, its discussion in that regard was not essential to its holding regarding Del Monte Dunes' right to a jury trial in its action brought pursuant to 42 U.S.C. § 1983. See id., 721 (opinion announcing judgment). Moreover, we are not persuaded that the differences between eminent domain proceedings and inverse condemnation actions outweigh their similarities for the purpose of determining whether an inverse condemnation action gives rise to a jury trial under our state constitution.

Finally, the court in *Del Monte Dunes* expressly indicated that it was not deciding the issue confronting this court in the present appeal. The United States Supreme Court stated in *Del Monte Dunes*: "We note the limitations of our Seventh Amendment holding. *We do not address the jury's role in an ordinary inverse condemnation suit. The action here was brought under [42 U.S.C.] § 1983, a context in which the jury's role in vindicating constitutional rights has long been recognized by the federal courts.*" (Emphasis added.) *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, supra, 526 U.S. 721 (opinion announcing judgment). Thus, it is abundantly clear that the holding of *Del Monte Dunes* does not dictate a holding contrary to our holding today.[37]

---

[37] The plaintiff also relies on language in *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 209, in which we highlighted certain similarities between inverse condemnation actions and takings claims under 42 U.S.C. § 1983. We stated: "There is no relevant distinction between the procedure and the substance of a pure taking claim and a § 1983 taking claim that would justify different treatment *with respect to the applicability of the exhaustion and finality doctrines.* In reviewing our precedent and the policy considerations underlying taking claims of either genre, we conclude that the *inapplicability of the exhaustion doctrine is equally applicable* to both § 1983 taking claims and pure taking claims." (Emphasis added.) Id. The plaintiff's reliance on this language is misplaced because, in its previous appeal, we had no occasion to address the jury trial issue raised in the present appeal. Instead, we considered the applicability of the exhaustion and finality doctrines to inverse condemnation claims, doctrines that implicate this court's subject matter jurisdiction. Id., 201–202; see, e.g., *Waterbury* v. *Washington*, 260 Conn. 506, 530, 800 A.2d 1102 (2002) (exhaustion doctrine); *Port Clinton Associates* v. *Board of Selectmen*, 217 Conn. 588, 604, 587 A.2d 126, cert. denied, 502 U.S. 814, 112 S. Ct. 64, 116 L. Ed. 2d 39 (1991) (finality doctrine). The reasons that prompted our similar treatment of inverse condemnation claims and claims under 42 U.S.C. § 1983 for those purposes essentially are irrelevant to our analysis of the jury trial issue presented by this appeal.

Finally, the plaintiff relies on *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 404 A.2d 889 (1978), as precedent supporting the right to a jury trial in inverse condemnation actions. In *Filisko*, the plaintiffs' inverse condemnation claim, along with two other claims, was tried to the jury. Id., 35. The issue of whether a *right* to a jury trial in inverse condemnation actions exists, however, was not raised in that case. Apparently, the defendants in

We therefore reject the plaintiff's claim of a right to a jury trial in connection with its inverse condemnation claim. Accordingly, the court, *Hurley, J.*, properly granted the town's motion to strike the plaintiff's case from the jury docket.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

*Filisko* did not object to a jury determination with respect to the plaintiffs' inverse condemnation claim. Inasmuch as the defendants in *Filisko* did not object to the plaintiffs' submission of their inverse condemnation claim to a jury, the mere fact that that claim was tried to a jury lends no support to the contention of the plaintiff in the present case that there is a *right* to a jury trial in inverse condemnation cases.