******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEPARTMENT OF TRANSPORTATION *v.*
WHITE OAK CORPORATION
(SC 20131)

Palmer, McDonald, Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 12-39g [a]) "[u]pon notification . . . that any taxes
. . . are (1) due to the state from any person and unpaid . . . and (2)
are not the subject of a timely filed administrative appeal . . . the
Comptroller shall withhold any . . . payment of any amount payable
by the state to such person unless the amount so payable is reduced
by the amount of such taxes, penalties and interest . . . ."

The defendant contractor, W Co., which had obtained a judgment against
the plaintiff Department of Transportation awarding money damages
but subsequently received a payment that had been reduced by the
comptroller pursuant to § 12-39g, appealed from the trial court's denial
of its postjudgment motion seeking a determination as to whether that
judgment had been fully satisfied. Specifically, W Co. claimed that the
comptroller was collaterally estopped from withholding the taxes owed
to the state in the present case because the plaintiff had failed to prove
a claim it had made relating to the existence of the same tax debt in a
separate arbitration proceeding. The trial court denied W Co.'s motion,
concluding that the doctrine of collateral estoppel did not preclude a
reduction pursuant to § 12-39g because that issue had never been fully
and fairly litigated. The trial court further concluded that § 12-39g
imposed a separate statutory obligation on the comptroller to reduce
the payment to W Co. by the amount of taxes it owed. On appeal, W Co.
claimed that the trial court improperly concluded that the comptroller's
reduction pursuant to § 12-39g was proper. *Held* that the trial court
properly denied W Co.'s motion seeking a determination as to whether
that judgment had been fully satisfied, the comptroller having properly
exercised his statutorily created obligation to reduce the payment to W
Co. by the amount of taxes owed: pursuant to the plain language of
§ 12-39g, the comptroller had a mandatory obligation to reduce the
payment by the amount of taxes owed, unless they were the subject
of a timely filed administrative appeal, and because the comptroller's
obligation pursuant to § 12-39g is part of a comprehensive scheme for
the collection of taxes that allowed W Co. to file a timely administrative
appeal to challenge those taxes, which W Co. failed to do, the comptroller
was required to reduce the payment by the amount of taxes owed;
moreover, W Co.'s claim that the doctrine of collateral estoppel barred
the comptroller from reducing the payment by the amount of taxes
owed was unavailing, as that doctrine was not applicable to the present
case, where W Co. could have filed a timely administrative appeal to
challenge those taxes but did not avail itself of that opportunity, and
to allow W Co. to avoid the payment of those taxes through a mechanical
application of collateral estoppel would frustrate the well recognized
social policy underlying this state's system of tax collection.

Argued November 8, 2018—officially released August 20, 2019

*Procedural History*

Application to vacate, correct or modify an arbitra-
tion award, brought to the Superior Court in the judicial
district of Hartford, where the defendant filed an appli-
cation to confirm the award; thereafter, the case was
tried to the court, *Hon. Richard M. Rittenband*, judge
trial referee, who, exercising the powers of the Superior
Court, rendered judgment denying the application to
vacate, correct or modify, and granting the application
to confirm, from which the plaintiff appealed to the
Appellate Court, *Gruendel*, *Beach* and *Peters*, *Js.*, which

reversed the judgment of the trial court and remanded the case with direction to vacate the arbitration award, and the defendant, on the granting of certification, appealed to this court; subsequently, this court reversed the judgment of the Appellate Court and remanded the case to that court with direction to affirm the judgment of the trial court; thereafter, the court, *Robaina, J.*, denied the defendant's motion seeking a determination as to whether the judgment had been satisfied, and the defendant appealed. *Affirmed.*

*Kerry M. Wisser*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellant (defendant).

*Christine Jean-Louis*, assistant attorney general, with whom, on the brief, was *George Jepsen*, former attorney general, for the appellee (plaintiff).

*Opinion*

MULLINS, J. After an arbitration proceeding, the defendant, White Oak Corporation (White Oak), was awarded a money judgment against the plaintiff, the Department of Transportation (department) in the amount of $8,362,308.41 plus interest. In paying that judgment on behalf of the department, the Office of the State Comptroller (comptroller) withheld $1,642,312.14 for taxes White Oak had owed to the state. As a result of this withholding, White Oak filed a motion with the trial court seeking a determination as to whether the judgment had been satisfied. In its motion, White Oak asserted that the department did not fully satisfy its judgment because, during a prior arbitration proceeding between the parties, the department had alleged but failed to prove its claim for taxes owed to the state and that, thus, the doctrine of collateral estoppel precluded the comptroller from reducing the payment by any amount for taxes owed.

The trial court rejected White Oak's claim and determined that the judgment had been satisfied. The defendant now appeals from the trial court's determination, again alleging that collateral estoppel precluded the comptroller from withholding the taxes owed to the state. We agree with the trial court that the department satisfied its judgment to White Oak because General Statutes § 12-39g imposed a mandatory obligation on the comptroller to reduce the amount paid to White Oak by the amount of taxes owed to the state as those taxes were not the subject of a timely filed administrative appeal. Accordingly, we affirm the judgment of the trial court.

The record reveals the following facts and procedural history. In 1994, the parties, White Oak and the department, entered into a contract for construction of the Tomlinson Bridge in New Haven. Nearly three years later, the parties entered into a second contract for reconstruction of the Yellow Mill Pond Bridge in Bridgeport. Both projects were beset by considerable delays and conflicts between the parties. As a result, in 2000, the parties entered into an agreement to reassign the contracts to a different contractor. Thereafter, White Oak filed notices of claims and corresponding demands for arbitration for each project pursuant to General Statutes § 4-61 (b)[1] claiming, inter alia, wrongful termination of each contract.

The matter relating to the Tomlinson Bridge was the first to proceed to arbitration (Tomlinson arbitration). In its answer to White Oak's revised amended demand, the department asserted various setoffs and counterclaims, only one of which is relevant here. The relevant counterclaim alleged that "[White Oak] presently has a tax debt due and owing to the state." During arbitration, no evidence was adduced regarding the tax claim

and neither party addressed it during oral argument. In 2004, the Tomlinson arbitration panel issued its award, rejecting White Oak's wrongful termination claim and awarding the department $1,169,648.33 in damages. With regard to the department's claim for a tax debt owed to the state, the panel ruled that "[the department] introduced no credible evidence of a tax debt due to the [state] and therefore failed to carry its burden of proof."

The matter relating to the Yellow Mill Pond Bridge subsequently proceeded to arbitration (Bridgeport arbitration). In 2009, the panel issued an award to White Oak in the amount of $8,362,308.41 plus interest. In response, the department filed an application to vacate, correct or modify that award pursuant to General Statutes §§ 52-418, 52-419, and 52-420, and White Oak filed an application to confirm the arbitration award pursuant to General Statutes § 52-417. The trial court denied the department's application to vacate, correct or modify the award and granted White Oak's application to confirm the award. The department appealed from the judgment of the trial court to the Appellate Court. The Appellate Court reversed the judgment of the trial court and remanded the case with direction to vacate the arbitration award. White Oak then filed a petition for certification to appeal to this court, which was granted. In *Dept. of Transportation* v. *White Oak Corp.*, 319 Conn. 582, 623, 125 A.3d 988 (2015), this court reversed the judgment of the Appellate Court and remanded the case to that court with direction to affirm the judgment of the trial court, thereby confirming the arbitration award in favor of White Oak.

Following this court's decision, White Oak sought payment of the judgment from the comptroller. The comptroller complied with White Oak's request for payment, however, when issuing the payment on behalf of the department, the comptroller reduced the amount paid by $1,642,312.14 for taxes owed to the state pursuant to § 12-39g.[2] Specifically, the comptroller reduced the amount paid by $1,231,350.36 for taxes White Oak owed to the Department of Revenue Services and by $410,961.78 for taxes it owed to the Department of Labor.

Thereafter, White Oak filed a motion seeking a determination as to whether the judgment had been satisfied. In that motion, White Oak asserted that the department did not fully satisfy its judgment because the comptroller reduced the amount paid by the amount of taxes owed. White Oak claimed that, because the Tomlinson arbitration panel determined that the department had not proven its claim for taxes owed to the state, the doctrine of collateral estoppel precluded the comptroller from reducing the payment by any amount for taxes.

In its memorandum of decision on White Oak's motion, the trial court concluded that the department had not failed to satisfy its judgment to White Oak. The

court determined that the doctrine of collateral estoppel did not preclude the comptroller from reducing the payment to White Oak by the amount of taxes owed because that issue was never fully and fairly litigated in the Tomlinson arbitration. It further determined that § 12-39g imposed a separate statutory obligation on the comptroller to reduce the payment to White Oak by the amount of taxes owed. Thus, the trial court denied White Oak's motion seeking a determination that the prior money judgment had not been satisfied. In accordance with that denial, the trial court amended the judgment file to indicate that the department had fully satisfied the judgment against it. This appeal followed.[3]

We begin by setting forth the standard of review and the relevant principles of law governing White Oak's claims. Until a judgment has been satisfied, courts have jurisdiction over all parties in an action. General Statutes § 52-350d (a). Moreover, parties may request a determination from the court as to whether a judgment has been satisfied. Practice Book § 6-5. In making that determination, a trial court must consider whether the following prerequisites have been met. "First, the judgment creditor must have obtained a valid money judgment against the judgment debtor. Second, the judgment debtor must have paid the amount of that judgment. In so doing, the court must find that the judgment debtor either made actual payment to the judgment creditor or a payment equivalent thereto." *Coyle Crete, LLC* v. *Nevins*, 137 Conn. App. 540, 552, 49 A.3d 770 (2012).

In the present case, the parties do not dispute whether White Oak obtained a valid money judgment against the department. See *Dept. of Transportation* v. *White Oak Corp.*, supra, 319 Conn. 582. Instead, the issue in the present appeal is whether the comptroller's reduction of the payment by the amount of taxes owed by White Oak to the state caused the department to fail to satisfy the judgment.

Our resolution of this question requires us to interpret the statutory scheme by which the state effectuates the payment of judgments against it, which "presents a question of statutory construction over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of

the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Independent Party of CT—State Central* v. *Merrill*, 330 Conn. 681, 704, 200 A.3d 1118 (2019).

We turn next to examining the relevant statutory scheme. As this court previously has explained, a plaintiff must either have an explicit statutory waiver of sovereign immunity or seek a waiver from the claims commissioner before bringing an action for monetary damages against the state in the Superior Court. See *Miller* v. *Egan*, 265 Conn. 301, 318, 828 A.2d 549 (2003). Once a party either receives a waiver from the claims commissioner or proceeds under an explicit statutory waiver, the action against the state proceeds pursuant to the statutory scheme set forth in chapter 53 of the General Statutes, which is entitled "Claims Against the State."

If the action results in a judgment against the state, that statutory scheme provides a process by which payment of the judgment is made by the state. See General Statutes § 4-160 (j).[4] Specifically, the statutory scheme directs that the comptroller, not the specific state agency involved in the litigation, makes payments of all judgments against the state. The statute explicitly instructs that "the clerk of the court in which judgment is entered against the state shall forward a certified copy of such judgment to the Comptroller. The Attorney General shall certify to the Comptroller when the time allowed by law for proceeding subsequent to final judgment has expired and the Attorney General shall designate the state agency involved in the action. Upon receipt of such judgment and certification the Comptroller shall make payment . . . ." General Statutes § 4-160 (j).

In carrying out its obligation to make such payments on behalf of the state, the comptroller is guided by a related statute, § 12-39g. That statute, which is contained within chapter 202 of the General Statutes, entitled "Collection of State Taxes," imposes specific requirements on the comptroller when undertaking the payment of judgments against the state. Thus, this taxing statute must also be considered part of the statutory scheme governing the payment of judgments against the state.

Section 12-39g (a) provides in relevant part: "Upon notification to the Comptroller by the Commissioner of Revenue Services that any taxes, including penalties and interest related thereto, are (1) due to the state from any person and unpaid and a period in excess of thirty days has elapsed following the date on which such taxes were due and (2) are not the subject of a timely filed administrative appeal to said commissioner or of a timely filed appeal pending before any court of competent jurisdiction, the Comptroller shall withhold any order upon the Treasurer for payment of any

amount payable by the state to such person unless the amount so payable is reduced by the amount of such taxes, penalties and interest . . . ."

The plain language of § 12-39g provides that, once the comptroller is notified that taxes are owed and that the taxes are not the subject of a timely filed administrative appeal, he must reduce any amount payable to the person or entity owing taxes by the amount of taxes owed. Indeed, § 12-39g provides that "the Comptroller *shall* withhold any order upon the Treasurer for payment of any amount payable by the state to such person *unless* the amount so payable is reduced by the amount of such taxes, penalties and interest . . . ." (Emphasis added.) Put a different way, the plain language of § 12-39g thus provides the comptroller with two choices— either withhold payment of the judgment in its entirety or reduce the payment by the amount of taxes owed.

The use of the term "shall" in § 12-39g is noteworthy. "In interpreting statutory text, this court has often stated that the use of the word shall, though significant, does not invariably create a mandatory duty. . . . The usual rule, however, is that [t]he . . . use of the word shall generally evidences an intent that the statute be interpreted as mandatory." (Internal quotation marks omitted.) *DeMayo* v. *Quinn*, 315 Conn. 37, 43, 105 A.3d 141 (2014), quoting *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 78, 676 A.2d 819 (1996). Therefore, although not dispositive, the use of the phrase "[t]he Comptroller *shall* withhold" in § 12-39g suggests a mandatory obligation on the part of the comptroller to either reduce the payment by the amount of taxes owed or to withhold such payment entirely. (Emphasis added.) The fact that § 12-39g uses the term "shall" in conjunction with the term "unless" provides further support for our understanding that it creates a mandatory obligation on the part of the comptroller to reduce the payment by taxes owed. See *Pereira* v. *State Board of Education*, 304 Conn. 1, 15, 37 A.3d 625 (2012) (concluding that General Statutes [Rev. to 2011] § 10-223e [h], which combined use of the terms shall and unless, "conveys a mandatory procedure to be followed" by State Board of Education); cf. *Caulkins* v. *Petrillo*, 200 Conn. 713, 717, 513 A.2d 43 (1986) (concluding that General Statutes [Rev. to 1985] § 20-429 [a], which uses both shall and unless, created mandatory requirement).

"The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative

terms unaccompanied by negative words." (Internal quotation marks omitted.) *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995). As we have explained previously in this opinion, § 12-39g is a part of the statutory scheme to collect taxes. Indeed, the collection of taxes is the essence of the comptroller's duty under § 12-39g. On the basis of the foregoing, we conclude that § 12-39g not only is an independent statutory basis by which the comptroller can reduce a payment by the amount of taxes owed, but creates a mandatory obligation on the part of the comptroller either to do so or to not issue a payment at all.

In the present case, White Oak brought its action pursuant to § 4-61, which is a specific statutory waiver of the state's sovereign immunity with respect to certain claims arising under public works contracts. See footnote 1 of this opinion. Once White Oak obtained a judgment against the state, it proceeded to follow the statutory scheme set forth in chapter 53 of the General Statutes, which is entitled "Claims Against the State." Specifically, pursuant to § 4-160 (j), White Oak requested that the clerk issue a certified copy of the judgment to the comptroller, and the clerk did so.

The comptroller, having been notified that White Oak owed taxes to the Department of Labor and the Department of Revenue Services and that those taxes were not the subject of a timely filed administrative appeal, paid the judgment after reducing the amount payable by the amount of taxes owed in accordance with § 12-39g.

As we have explained previously in this opinion, the comptroller is obligated to reduce the payment by the amount of taxes owed, unless they are the subject of a timely filed administrative appeal. In the present case, White Oak does not assert that the taxes withheld by the comptroller were the subject of a timely filed administrative appeal. Instead, White Oak asserts that the Tomlinson arbitration resulted in a determination that it did not owe any taxes. Nonetheless, nothing in the plain language of § 12-39g allows the comptroller to not reduce the payment to White Oak by taxes owed because those taxes were not the subject of a timely filed administrative appeal. Accordingly, we conclude that the comptroller properly exercised his statutorily created obligation to reduce the payment to White Oak by the amount of taxes owed.

White Oak asserts that, under the doctrine of collateral estoppel, the comptroller was barred from reducing the payment to White Oak by the amount of taxes owed. We disagree. "Application of the doctrine of collateral estoppel is neither statutorily nor constitutionally mandated. The doctrine, rather, is a judicially created rule of reason that is enforced on public policy grounds." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 58–59, 808 A.2d

1107 (2002). We also have explained that "[c]ourts should be careful that the effect of the doctrine does not work an injustice. . . . Thus, [t]he doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Citation omitted; internal quotation marks omitted.) Id., 59–60. The application of the doctrine of collateral estoppel is a legal question, over which we exercise plenary review. See, e.g., *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 345, 15 A.3d 601 (2011).

Because we conclude that, pursuant to § 12-39g, the comptroller was obligated to reduce the payment to White Oak by the amount of taxes owed because they were not the subject of a timely filed administrative appeal, we decline to apply the doctrine of collateral estoppel in the present case. As we have explained previously in this opinion, the comptroller's obligation pursuant to § 12-39g is part of a comprehensive scheme for the collection of taxes and that scheme allowed White Oak to file a timely administrative appeal to challenge those taxes. White Oak did not avail itself of that opportunity and allowing it to avoid its tax obligation now through a mechanical application of collateral estoppel would frustrate the well recognized social policy of tax collection.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 4-61 provides in relevant part: "(a) Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Administrative Services, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined . . . .

"(b) As an alternative to the procedure provided in subsection (a) of this section, any such person, firm or corporation having a claim under said subsection (a) may submit a demand for arbitration of such claim or claims for determination under (1) the rules of any dispute resolution entity, approved by such person, firm or corporation and the agency head and (2) the provisions of subsections (b) to (e), inclusive, of this section . . . ."

[2] General Statutes § 12-39g (a) provides: "Upon notification to the Comptroller by the Commissioner of Revenue Services that any taxes, including penalties and interest related thereto, are (1) due to the state from any person and unpaid and a period in excess of thirty days has elapsed following the date on which such taxes were due and (2) are not the subject of a timely filed administrative appeal to said commissioner or of a timely filed appeal pending before any court of competent jurisdiction, the Comptroller shall withhold any order upon the Treasurer for payment of any amount payable by the state to such person unless the amount so payable is reduced by the amount of such taxes, penalties and interest, provided any such amount payable by the state shall not be so reduced if such amount payable is a payment of salary or wages, or any payment in lieu of or in addition to such salary or wages, to a state employee. The Comptroller shall promptly notify the Commissioner of Revenue Services of any payment reduced under the provisions of this section."

[3] White Oak appealed to the Appellate Court, and we transferred that

appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199.

<sup>4</sup> General Statutes § 4-160 (j) provides: "The clerk of the court in which judgment is entered against the state shall forward a certified copy of such judgment to the Comptroller. The Attorney General shall certify to the Comptroller when the time allowed by law for proceeding subsequent to final judgment has expired and the Attorney General shall designate the state agency involved in the action. Upon receipt of such judgment and certification the Comptroller shall make payment as follows: Amounts directed by law to be paid from a special fund shall be paid from such special fund; amounts awarded upon contractual claims for goods or services furnished or for property leased shall be paid from the appropriation of the agency which received such goods or services or occupied such property; all other amounts shall be paid from such appropriation as the General Assembly may have made for the payment of claims."

––––––––––––––––––––––––––––––